IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HI-TEX, LLC,<br>a Nevada limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>PAUL M. VOREL, *et al.*,<br><br>    Defendants. | Case No. CIV-21-1125-D |

## **ORDER**

Before the Court are the following *Daubert* motions, in which the parties seek to exclude the opposing party's retained expert witness:

- Plaintiff's *Daubert* Motion to Strike Defendants' Expert Witness Ted Blodgett and Exhibits [Doc. No. 86] (the "Blodgett Motion"); and

- Defendants John Ernest Light, Tina S. Light, and Investors Services, Inc.'s Motion to Exclude Expert Report and Testimony of David Bloom, C.P.A. [Doc. No. 87] (the "Bloom Motion").[1]

The Light Defendants filed a Response [Doc. No. 98] to the Blodgett Motion, but Plaintiff did not file a reply. Plaintiff filed a Response [Doc. No. 100] to the Bloom Motion, and the Light Defendants filed a Reply [Doc. No. 104]. The Motions are fully briefed and at issue.

## **BACKGROUND**

This case concerns the alleged misappropriation and conversion of funds from two New Mexico payday lending businesses: Cashco, Inc. and Budget Payday Loans, L.P. By

---

[1] John Ernest Light, Tina S. Light, and Investors Services, Inc. are the only Defendants that filed, or responded to, the instant motions. Paul M. Vorel and Accounting for Edmond, LLC did not. Therefore, for ease of reference, the Court refers to John Ernest Light, Tina S. Light, and Investors Services, Inc. as the "Light Defendants."

oral agreement, Defendants were responsible for monitoring Cashco and Budget's financial activities, keeping accurate records, reconciling financial statements, and conducting certain transactions on behalf of each store. Performing these duties in exchange for a set monthly fee, Defendants had access to each of Cashco and Budget's operating accounts.

Defendants allegedly exploited this access by initiating a series of improper distributions. Rather than distribute funds from the operating accounts to Cashco's and Budget's owners—Randall C. Roche, Ronald Tsuchiyama, Michael Harada, and William Montelongo (the "Individual Owners")—Defendants withdrew and used around $360,000 from the accounts for their own benefit.[2]

In addition to owning Cashco and Budget, the Individual Owners also own Plaintiff HiTex, LLC, an entity to which they assigned their claims in this case. Plaintiff asserts six causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) conversion; (4) fraud; (5) unjust enrichment; and (6) negligence. Plaintiff seeks monetary damages in the amount of $320,000, plus interest and costs.

In the instant Motions, Plaintiff seeks to exclude the opinions and testimony of the Light Defendants' retained expert, Ted Blodgett. The Light Defendants, in turn, seek to exclude the opinions and testimony of Plaintiff's retained expert, David Bloom.

## STANDARD OF DECISION

Federal Rule of Evidence 702 imposes upon the Court an important gatekeeping function in determining the admissibility of expert opinions:

---

[2] The Complaint seeks damages in the amount of $320,000; however, Plaintiff's Initial Disclosures calculates damages at $360,000.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In considering whether an expert's opinion is admissible, the Court performs a two-step analysis. First, the Court must "determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (internal quotation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable" under the principles set forth in *Daubert*, and relevant in that the opinion will assist the trier of fact. *See id.*; *see also Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

District courts have "considerable leeway" in determining the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "The trial court's broad discretion applies both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003); *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004) (noting that

3

the district court may choose "the manner in which [it] exercises its *Daubert* 'gatekeeping' role").

The Supreme Court in *Daubert* listed four non-exhaustive factors that a trial court may consider in making its reliability assessment. *See Kumho Tire*, 526 U.S. at 149–50 (listing *Daubert* factors). "The Daubert factors are 'meant to be helpful, not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009). In non-scientific cases such as this, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The inquiry is always, and of necessity, highly fact-specific, and no one factor is outcome determinative.

## DISCUSSION

### I. The Blodgett Motion

#### A. Mr. Blodgett is qualified to offer his opinions.

As a preliminary matter, the Court must determine whether Mr. Blodgett is qualified by knowledge, skill, experience, training, or education to render the opinions to be offered. Plaintiff does not challenge Mr. Blodget's qualifications to render the opinions stated in his report.

Upon independent review, the Court finds that Mr. Blodgett's extensive accounting and valuation background, training, and experience—as set forth on page 13 of his report,

*see* Blodgett Report [Doc. No. 64-1]—adequately establish his relevant expertise.[3] Therefore, the Court finds that Mr. Blodgett is qualified by knowledge, skill, experience, training, or education to offer both opinions set forth in his report. *See* Fed. R. Evid. 702.

### B.  Mr. Blodgett's opinions are sufficiently reliable.

Plaintiff criticizes Mr. Blodgett for failing to consider, or understand, the documents and evidenced produced in this case. *See generally* Blodgett Mot. at 4-7. Specifically, Plaintiff takes issue with Mr. Blodgett's own hypothetical, in which he posits that "Plaintiff cannot have suffered damages if a distribution was recorded as a distribution payable and then later distributed." *Id.* at 4-5. This perceived shortcoming, as exemplified through the use of his hypothetical, renders Mr. Blodgett's opinions "inconsistent with the evidence produced" in this case. *See id.* at 7.

In response, the Light Defendants first argue that Plaintiff's arguments regarding Mr. Blodgett's hypothetical "are contrary to Mr. Blodgett's own explanation of his hypothetical." Light Defs.' Resp. at 8. The Light Defendants next argue that, because Mr. Blodgett's scope of work was intentionally narrow, he only needed to review a "narrow set of documents." *Id.* at 9. Therefore, the Light Defendants continue, what Mr. Blodgett reviewed, or did not review, goes "to the weight of Mr. Blodgett's testimony, not its admissibility." *Id.* at 9-10.

Upon consideration, the Court agrees with the Light Defendants that Plaintiff's objections largely go to the weight of Mr. Blodgett's testimony, rather than its admissibility.

---

[3] All citations to the parties' filings reference the Court's CM/ECF pagination at the top of each page.

5

That Mr. Blodgett may not have considered specific evidence Plaintiff contends is relevant or necessary does not render his testimony *per se* inadmissible. Plaintiff is free, on cross-examination, to expose what weaknesses it believes exist in Mr. Blodgett's analysis. *See Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (stating that if there is a logical basis for an expert's opinion, the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony), *overruled on other grounds by Kumho Tire*, 526 U.S. at 147; *see also Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006) (noting that gaps or inconsistencies in an expert's testimony concern the weight of the evidence and not its admissibility); *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

The touchstone of Rule 702 is whether the proffered testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Stated another way, if there are "good grounds" for the expert's conclusion, it should be admitted. *Daubert*, 509 U.S. at 590; *see also Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) ("[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the [expert's] methods, if there are good grounds for the expert's conclusion, it should be admitted."). Given the narrow scope of Mr. Blodgett's testimony, the Court finds that reasonable grounds exist for his conclusions, and his testimony will assist the trier of fact in determining the issues on which he is called to testify. Plaintiff's arguments and

objections go to the weight of Mr. Blodgett's testimony and are better suited for cross-examination at trial.

## II. The Bloom Motion

### A. Mr. Bloom is qualified to offer his opinions.

The Light Defendants argue that, although Mr. Bloom may be qualified "in the general sense" to render opinions in the field of accounting, he lacks the specialized and developed background and knowledge to testify on issues of "forensic accounting, financial forensics, and/or fraud investigation." Bloom Mot. at 19. Therefore, the Light Defendants conclude, Mr. Bloom should not be permitted to offer his opinions in this case.

In response, Plaintiff argues Mr. Bloom completed a "rigorous education" in becoming a certified public accountant, and thus is qualified in the general sense. *See* Pl.'s Resp. at 6-7. As for the Light Defendants' argument that Mr. Bloom lacks the specialized knowledge required to testify in this case, Plaintiff notes that, according to the Association of International Certified Professional Accountants, "*all* CPAs, including Bloom, possess the specialized knowledge and investigative skills required to perform forensic accounting services." *Id.* at 7-8 (emphasis in original).

In considering the issue of expert qualification, the Court employs a focused approach. *See generally Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968-70 (10th Cir. 2001). The question before the trial court is "specific, not general." *Kumho Tire*, 526 U.S. at 156. The trial court must decide "whether this particular expert ha[s] sufficient knowledge to assist the jurors 'in deciding the particular issues in the case.'" *Id.* "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract,

7

but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092–93 (W.D. Okla. 2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Upon review of Mr. Bloom's report and relevant deposition testimony, and although a rather close call, the Court is satisfied Mr. Bloom is qualified to opine on the topics set forth in his report. "As long as an expert stays 'within the reasonable confines of his subject area,' our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'" *Fish v. Kobach*, 304 F. Supp. 3d 1027, 1037 (D. Kan. 2018) (quoting *Ralston*, 275 F.3d at 970). Indeed, "[a] court abuses its discretion if it refuses to qualify a witness as an expert solely because the expert does not have the degree or specialization that the court considers to be most appropriate." *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1241 (D.N.M. 2013) (citation omitted).

Although Mr. Bloom does not have the forensic accounting qualifications that the Light Defendants deem essential, such a perceived shortcoming goes to the weight the jury should afford Mr. Bloom's testimony, not to its admissibility. As such, the Court finds that Mr. Bloom is qualified by knowledge, skill, experience, training, or education to offer both opinions set forth in his report. *See* Fed. R. Evid. 702.

**B.     Mr. Bloom's opinions are sufficiently relevant.**

The Light Defendants next contend Mr. Bloom's opinions are not relevant because they do not "fit with the issues of this case." Bloom Mot. at 15. That's because, the Light Defendants continue, Mr. Bloom opines on matters outside of the "four (4) transactions

8

giving rise to the distributions allegedly owed to the Owners and the damages the Owners sustained in not receiving those distributions." *Id.* at 16.

In response, Plaintiff contends Mr. Bloom's contested opinions are relevant to show "that Defendants no longer have access to the funds intended to be used for distributions and, therefore, such distributions cannot be paid to Plaintiff." Pl.'s Resp. at 5. Mr. Bloom's opinions, according to Plaintiff, support its theory that Defendants commingled funds, to make them untraceable. *Id.*

Upon consideration, and for largely the same reasons discussed below, Mr. Bloom's opinions are sufficiently relevant. The Light Defendants are free to explore on cross-examination the perceived shortcomings of Mr. Bloom's analysis as it relates to the four transactions set forth in the Complaint, or any other perceived shortcoming for that matter. But the Court is satisfied that Mr. Bloom's testimony is "sufficiently tied to the facts of the case [such] that it will aid the jury." *Taber v. Allied Waste Sys., Inc.*, No. CIV–13–773–D, 2015 WL 1119750, at *10 (W.D. Okla. Mar. 11, 2015).

### C. Mr. Bloom's opinions are sufficiently reliable.

The Light Defendants last contend Mr. Bloom's opinions are unreliable because they do not "rely upon any explained methodology." Bloom Mot. at 21. Specifically, the Light Defendants take issue with Mr. Bloom's perceived failure to "connect the dots between the materials he reviewed and his own education or experience to then detail the supporting bases for his opinions." *Id.* at 22.

In response, Plaintiff argues "any trained CPA with Bloom's experience and education would be able to conduct the same analysis Bloom has done with the same

9

documents." Pl.'s Resp. at 9. Plaintiff contends Mr. Bloom's analysis is "similar to the analysis and conclusions reached by Ken Klingenberg as special master and discovery master in the companion cases." *Id.* at 9-10. At bottom, Plaintiff continues, because Mr. Bloom relied both on his experience and documents produced in this case (as opposed to one or the other), his opinions are sufficiently reliable. *Id.* at 10-11.

Upon consideration, the Court finds that Mr. Bloom's opinions are sufficiently reliable, and the Light Defendants' arguments go to the weight of those opinions, not their admissibility. In short, the Court disagrees that Mr. Bloom's report "is unreliable because [he] either did not employ or failed to disclose any particular methodology." *Lawlis v. Moore Iron & Steel Corp.*, No. CIV-13-823-D, 2016 WL 11261895, at *3 (W.D. Okla. Jan. 11, 2016).

This is especially true in cases, such as this, involving accounting-based claims and corresponding expert testimony. *See Int'l Adhesive Coating Co. v. Bolton Emerson Int'l*, 851 F.2d 540, 544-45 (1st Cir. 1988) ("Company records and statements by company personnel are types of data reasonably relied upon by accountants, and opinions based on those types of information are typically admissible under Rule 703."); *see also Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980) (holding that accountant may rely on files and financial statements of corporation); *Rural Water Dist. No. 5 Wagoner Cnty., Okla. v. City of Coweta*, No. 08-CV-252-JED-FHM, 2013 WL 5558390, at *2 (N.D. Okla. Oct. 8, 2013) ("[A]ccounting experts may typically base their expert opinions upon data and information provided by others, such as information from a corporation's business or financial records or interviews with employees, because such sources of information are

normally and reasonably relied on by accountants."); *Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 570 (E.D. Pa. 2004) (admitting testimony of plaintiff's damages expert in breach of contract action where the expert relied on business records provided by the plaintiff).

## CONCLUSION

For the reasons stated, the Blodgett Motion [Doc. No. 86] and Bloom Motion [Doc. No. 87] are **DENIED**.

**IT IS SO ORDERED** this 20th day of March, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge