IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

HI-TEX, LLC,                                 )
                                             )
          Plaintiff,                         )
                                             )
v.                                           )        Case No. CIV-21-1125-D
                                             )
PAUL M. VOREL, *et al.*,                     )
                                             )
          Defendants.                        )

## ORDER

Before the Court are the following cross-motions for summary judgment: (1) Defendants John Ernest Light, Tina S. Light, and Investors Services Inc.'s Motion for Summary Judgment With Brief in Support [Doc. No. 88]; and (2) Plaintiff's Motion for Partial Summary Judgment [Doc. No. 90].[1] Plaintiff filed a Response [Doc. No. 99] to the Light Defendants' Motion, and the Light Defendants filed a Reply [Doc. No. 103]. The Light Defendants filed a Response [Doc. No. 102] to Plaintiff's Motion, and Plaintiff filed a Reply [Doc. No. 105]. The Motions are fully briefed and at issue.

## BACKGROUND AND UNDISPUTED MATERIAL FACTS[2]

This case concerns the alleged misappropriation and conversion of funds from two New Mexico-based lending businesses: Cashco, Inc. (Cashco) and Budget Payday Loans,

---

[1] John Ernest Light, Tina S. Light, and Investors Services, Inc. (ISI) are the only defendants that filed, or responded to, the instant motions. Paul M. Vorel and Accounting for Edmond, LLC did not. Therefore, for ease of reference, the Court refers to John Ernest Light, Tina S. Light, and Investors Services, Inc. as the "Light Defendants."

[2] This statement includes material facts that are supported by the record and not opposed in the manner required by Fed. R. Civ. P. 56(c)(1) and LCvR56.1(d). All facts properly presented

L.P. (Budget). During all times relevant to this case, Budget and Cashco operated small loan businesses in and around Albuquerque, New Mexico. Randall C. Roche, Michael Harada, William Montelongo, and Joey Tsuchiyama (who is the surviving spouse of Ronald Tsuchiyama) (collectively, the "Owners") own Cashco and Budget. The Owners also own Plaintiff Hi-Tex, LLC, the entity to which they assigned the claims asserted in this case.

During the discovery phase of this case, the Light Defendants each served discovery requests on Plaintiff. As part of those requests, each of the Light Defendants asked Plaintiff to admit that it did not have a contract with the respective individual or entity. Pl.'s Resp. to E. Light First Disc. Req. [Doc. No. 88-2] at 10; Pl.'s Resp. to T. Light First Disc. Req. [Doc. No. 88-4] at 11; Pl.'s Resp. to ISI First Disc. Req. [Doc. No. 88-6] at 3.[3] In each instance, Plaintiff admitted that no contract existed. *Id.* Instead, Defendant Accounting for Edmond, LLC (AFE) was responsible for conducting certain transactions for the benefit of Cashco's and Budget's respective stores.

During the time period relevant to this case, AFE[4] provided various bookkeeping and accounting services to Budget and Cashco for a monthly "management fee." Compl.

---

by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Fed. R. Civ. P. 56(e)(2) and LCvR56.1(e).

[3] Citations to the parties' filings reference the Court's CM/ECF pagination at the top of each page.

[4] The Court recently entered default judgment as to liability against AFE. The procedural and factual history leading to that default judgment can be found in the Court's April 4, 2025 order [Doc. No. 110].

[Doc. No. 1], ¶¶ 16-17.[5] Defendant Paul Vorel owned 51% of AFE, and Ms. Light owned 49%. AFE 2022 Tax Form [Doc. No. 91-6] at 26. AFE was authorized to access Budget's and Cashco's stores' respective bank accounts so that it could perform various accounting and bookkeeping services. Compl., ¶¶ 14, 23. Although AFE was authorized to access the accounts and make withdrawals, AFE did not keep these funds in its own bank account. Instead, AFE routed these funds into a bank account belonging to ISI. ISI Disc. Resp. [Doc. No. 90-2] at 5-6. ISI—which is owned exclusively by Mr. Light—was presented as a "pass through" entity, meaning its intended use was to receive and distribute the funds designated as profit distributions. *Id.* at 39; E. Light Depo. [Doc. No. 90-30], 202:19-21.

Throughout the business relationship, AFE continued to withdraw and keep Budget's and Cashco's money in ISI's accounts. But according to Plaintiff, AFE and ISI did not distribute to the Owners all of the money withdrawn and kept in the ISI accounts.[6] Instead, Plaintiff alleges, when the business relationship between AFE and Budget and Cashco ended in late 2016, neither AFE nor ISI distributed the remaining funds to the Owners.

On numerous occasions before the filing of this case, the Owners demanded the release of the remaining funds. One of these demands is of particular importance here. On

---

[5] Although allegations in the Complaint are not, on their own, evidence for purposes of summary judgment, the Light Defendants do not dispute the allegations. Therefore, the Court treats the allegations, as set forth in Plaintiff's Motion, as undisputed facts under Rule 56(e).

[6] As detailed below, the Court does not reach the merits of Plaintiff's non-contract claims, as it finds those claims to be time-barred or, alternatively, brought pursuant to an improper assignment. Therefore, the information regarding the improper retention of Cashco's and Budget's funds is not material to the Court's analysis. Rather, it is provided for contextual purposes to understand the events leading to this point.

June 18, 2019, D. Todd Riddles, ISI's attorney at the time (and counsel of record for the Light Defendants in this case), sent Cashco's bankruptcy attorney, George D. Giddens, a letter via regular and electronic mail. 6/18/2019 Letter [Doc. No. 88-1]. In the letter, Mr. Riddles informs Mr. Giddens that ISI is in possession of $142,500.00 belonging to Cashco. *Id.* Mr. Riddles further relayed his belief that, because Cashco had filed Chapter 7 bankruptcy, the proper course of action was to deliver the funds to the bankruptcy trustee. *Id.*

On July 2, 2019, Plaintiff's then-counsel, Stephen P. Curtis, sent a response letter to Mr. Riddles. 7/2/2019 Letter [Doc. No. 90-12]. In his response, Mr. Curtis states that his firm has been representing Plaintiff "in connection with civil litigation in New Mexico and in connection with the Cashco and Budget Chapter 7 cases." *Id.* After stating that he spoke with Randy Roche (one of the Owners of Cashco and Budget) about the $142,500.00, Mr. Curtis emphasizes that ISI "never had authority to withhold these funds and should have distributed them to the shareholders when the funds were disbursed by Cashco." *Id.* Mr. Curtis goes on to say that, in his view, it seems "fairly clear that Vorel's holding of these funds amounts to embezzlement . . . ." *Id.*

### STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for

the non-moving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the non-movant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the non-movant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross-motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## DISCUSSION

The parties' cross-motions seek favorable summary judgment rulings regarding Plaintiff's two categories of claims—*i.e.*, its breach-of-contract claim and its non-contract claims for breach of fiduciary duty, conversion, fraud, unjust enrichment, and negligence. As will be discussed in detail below, the Court finds that the Light Defendants are entitled to summary judgment on both categories of claims.

## I.    The Light Defendants are entitled to summary judgment on Plaintiff's breach-of-contract claim.

### A.    Plaintiff's admissions in discovery conclusively establish that it did not have a contract with any of the Light Defendants.

The Light Defendants argue that Plaintiff's admissions during discovery conclusively establish that none of them had a contract with Plaintiff. *See* Light Defs.' Mot. Summ. J. at 8-10; Light Defs.' Reply at 7-8. More specifically, the Light Defendants point to Plaintiff's responses to certain requests for admission, in which Plaintiff admits— without qualification or explanation—that none of the Light Defendants had a contract with Cashco or Budget for accounting services during the relevant time period. *See* Pl.'s Resp. to E. Light First Disc. Req. [Doc. No. 88-2] at 10; Pl.'s Resp. to T. Light First Disc. Req. [Doc. No. 88-4] at 11; Pl.'s Resp. to ISI First Disc. Req. [Doc. No. 88-6] at 3.

In response, Plaintiff argues that the Light Defendants, in relying on Plaintiff's admissions, "attempt to capitalize on the stipulated fact that there was no *written* contract." Pl.'s Resp. to Light Defs.' Mot. Summ. J. at 17 (emphasis in original). "[S]o long as there is evidence that an implied contract existed," Plaintiff continues, "summary judgment

should be denied as it is the trier of fact who must determine whether a contract existed."

*Id.*

Federal Rule of Civil Procedure 36 governs requests for admission and the effect of a party's admission:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36(b).

Upon careful consideration, the Court finds that Plaintiff's admissions in discovery conclusively establish that it did not have a contract with any of the Light Defendants. Plaintiff attempts to skirt around its admission by arguing that it admitted only to the absence of a *written* contract, as opposed to any form of contract. But that is not correct. Each of the Light Defendants' requests for admission asked Plaintiff to admit that Cashco or Budget "did not have a contract" with the respective defendant. Plaintiff's response to each request was the same: "Admitted." Plaintiff did not assert a partial admission or otherwise clarify that it was admitting only to the absence of a *written* contract, as opposed to any form of contract. Plaintiff's admissions were concise and unequivocal, and, as will be explained below, it does not appear that it ever attempted to correct or clarify the admissions (until its summary-judgment briefing).

Even though Plaintiff has not formally moved to withdraw or amend its admissions, "the Tenth Circuit has held 'that a response to a motion for summary judgment arguing in part that the opposing party should not be held to its admissions can constitute a Rule 36(b) motion to withdraw those admissions.'" *Schendzielos v. Borenstein*, 16-CV-00564-RBJ, 2016 WL 614473, at *3 (D. Colo. Feb. 16, 2016) (quoting *Bergemann v. United States*, 820 F.2d 1117, 1120–21 (10th Cir. 1987)). Here, Plaintiff takes the position (though perhaps implicitly) that it should not be held to its admissions. Therefore, the Court will give Plaintiff the benefit of the doubt and consider whether it should be allowed to withdraw or amend its admissions.

Courts apply a two-factor test when deciding whether to allow withdrawal or amendment of an admission: "'when [1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" *Id.* at *3 (quoting *Raiser v. Utah Cnty.*, 409 F.3d 1243, 1246 (10th Cir. 2005)).

Here, both factors weigh against withdrawal or amendment. As explained in the next section, even if Plaintiff were allowed to amend its admissions to reflect its current position that no *written* contract existed, its implied-in-fact contract theory fails. And the Light Defendants would be prejudiced by withdrawal or amendment, as they have litigated this case under the assumption—which derives from Plaintiff's own admissions—that they did not have a contract with Plaintiff. This is not a case where a party simply failed to respond to a request for admission, and thus allowing the party to respond out-of-time could hardly

be said to prejudice the opposing party.[7] Rather, Plaintiff made the conscious choice to make the admissions it did, and, absent circumstances not present here, it should be held to that choice.

For these reasons, the Court finds that Plaintiff's Rule 36 admissions conclusively establish that it did not have a contract with any of the Light Defendants. Therefore, without the existence of any contract, the Light Defendants are entitled to summary judgment on Plaintiff's breach-of-contract claim.

### B.    Alternatively, Plaintiff fails to set forth specific facts tending to show the existence of an implied-in-fact contract.

The Court finds that Plaintiff's Rule 36 admissions conclusively establish that it did not have a contract with any of the Light Defendants, and, therefore, the Light Defendants are entitled to summary judgment on that ground. But even if that weren't the case, the Court further finds that Plaintiff fails to set forth specific facts tending to show the existence of an implied-in-fact contract with any of the Light Defendants.

Before moving to the heart of its analysis, the Court first attempts to clarify an important point. In its briefing, Plaintiff refers to both an implied contract and a quasi-contract, and appears to conflate the two (or, at the very least, does not specify which evidence tends to support which theory of recovery). As explained by the Oklahoma Supreme Court, there is a difference, and the difference matters here:

---

[7] Based on the Court's research, the vast majority of cases analyzing whether to allow amendment or withdrawal of an admission involve a fact pattern where the responding party did not timely respond to the request, and, therefore, the request was deemed admitted under Rule 36(a)(3). Because those are not the facts here, the Court places little stock in those cases.

> We have recognized or classified contractual relationships in three manners: (a) quasi contracts, which are commonly referred to as implied-in-law or constructive contracts: (b) implied-in-fact contracts: (c) express contracts.
>
> ***
>
> A quasi or constructive contract is an implication of law. An implied contract is an implication of fact. In the former the contract is a mere fiction, imposed in order to adapt the case to a given remedy. In the latter, the contract is a fact legitimately inferred. In one, the intention is disregarded; in the other, it is ascertained and enforced. In one, the duty defines the contract; in the other, the contract defines the duty.

*T & S Inv. Co. v. Coury*, 593 P.2d 503, 504-05 (Okla. 1979) (quoting *Berry v. Barbour*, 279 P.2d 335, 338 (Okla. 1954)) (internal quotation marks omitted). "A quasi contract has no reference to the intentions or expressions of the parties. . . . Where a case shows that it is the duty of the defendant to pay, the law imputes to him a promise to fulfill that obligation. The duty, which thus forms the foundation of a quasi-contractual obligation, is frequently based on the doctrine of unjust enrichment." *Berry*, 279 P.2d at 338 (quoting 12 AM. JUR. 502, § 6).[8]

---

[8] Judge Jodi Dishman recently addressed the concepts and provided a succinct, helpful explanation:

> Under Oklahoma law, a contract can either be express or implied. 15 Okla. Stat. § 131. Implied contracts, at issue here, are ones "the existence and terms of which are manifested by conduct." *Id.* § 133. Oklahoma recognizes that implied-in-law contracts (or "quasi-contracts" or "constructive contracts") are mere legal fictions where the intention of the parties is disregarded, and an implied-in-law contract is "imposed in order to adapt the case to a given remedy." *T & S Inv. Co. v. Coury*, 1979 OK 53, 593 P.2d 503, 504–05 (citation omitted). For an implied-in-fact contract, the intention of the parties "is ascertained and enforced" and "the contract is a fact legitimately inferred." *Id.* (citation omitted). An action can lie for a breach of duties *ex contractu* (or "from a contract") regardless of whether the duty arose from a contract that was implied in law, implied in fact, or express. *Shebester v. Triple Crown Insurers*, 1992 OK 20, 826 P.2d 603, 610.

Here, it is unclear whether Plaintiff contends there was an implied-in-fact contract or a quasi-contract. Indeed, based on the briefing, it is reasonable to conclude that Plaintiff argues in favor of both. However, to the extent Plaintiff argues in favor of a quasi-contractual remedy, such a remedy takes the form of a claim for unjust enrichment. *Shoemaker Corp. III, Inc. v. Garrett*, 704 F. Supp. 3d 1222, 1254 (N.D. Okla. 2023) ("A breach of an implied-in-law contract, otherwise known as a claim for unjust enrichment . . . ."); *Armijo v. Affilion, LLC*, 854 F. App'x 236, 241 (10th Cir. 2021) ("Claims brought under a quasi-contract are essentially the same as claims for quantum meruit or unjust enrichment."). Plaintiff has explicitly pled a claim for unjust enrichment, but, for the reasons discussed in the next section, that claim is time-barred and brought pursuant to an improper assignment. Therefore, the Court assumes Plaintiff takes the position that there existed an implied-in-fact contract between it and the Light Defendants.

In support of its implied-in-fact contract theory, Plaintiff points to very little in the way of evidence, and the majority of evidence it does cite seems to support either a quasi-contract theory or breach-of-fiduciary duty theory:

> Defendants realized benefits that, in equity, they should not be allowed to retain. Defendants understood that they had no right to the money held by ISI for Budget and Cashco's benefit, yet they kept it anyway. Still further, Defendants lost this money to the partial satisfaction of their personal judgment debts. As Defendants knowingly accepted the benefits of these funds, knew that they had no right to these funds, and nevertheless retained them, Plaintiff is entitled to maintain a breach of contract action through quasi-contract doctrine.

---

*Emergency Servs. of Okla., PC v. United HealthCare Ins. Co.*, 650 F. Supp. 3d 1211, 1220 (W.D. Okla. 2022).

***

[T]hese Defendants took action to ensure these funds would no longer be available to Budget and Cashco. For example, when Tina Light took over exclusive control of AFE, *after* it had already been determined that AFE owed Budget and Cashco $142,500, she refused to distribute this money. Using her position, Tina Light instead routinely wrote checks from these accounts for personal gain and for the benefit of the other Defendants. As of the date of Tina Light's admission of control, ISI's account contained only $79,503.29, an amount insufficient on its own to make the required distribution to Budget and Cashco. Regardless, she failed to distribute even a partial payment of the amount owed, despite knowledge that the funds belonged to Budget's and Cashco's owners. However, AFE's other accounts reflected balances of $41,855.23 (AFE Operating Account) and $42,643.76 (AFE Bill Pay Account). Thus, Tina Light, in her role as sole operator of AFE, was in possession of sufficient funds to make the identified distributions owed to Budget and Cashco. While Tina Light's refusal to distribute *any* of this money to Budget and Cashco is alone a breach of her fiduciary duties, her *actual* use of the funds is worse still. Rather than distribute *any* money to Budget's or Cashco's owners, Tina Light used this money for personal expenses, including unsubstantiated payments to her son, Paul Vorel (who had already been found to have fabricated evidence), unsubstantiated payments to her husband, Ernie Light, unsubstantiated payments to herself, and even paid personal legal bills arising out of other cases against her. For example, Tina Light paid herself $3,000 on May 15, 2022. She paid herself again in June along with Paul Vorel and her husband, Ernie Light. Likewise, Tina Light paid legal bills in June, routed money previously marked as profit distributions to MER, the separate entity which handled employee payroll, and paid over $9,000 to legal counsel. Each transaction ensured that Budget and Cashco would receive less of the total amount of distributions confessed to be owed to them.

Pl.'s Resp. to Light Defs.' Mot. Summ. J. at 19, 20-22 (emphasis in original) (internal citations omitted).

The above-quoted evidence, if true, could perhaps support claims for unjust enrichment or breach of fiduciary duty. But it hardly moves the needle regarding the critical inquiry for Plaintiff's breach-of-contract claim—*i.e.*, whether there was "a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from

conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Shoemaker Corp. III*, 704 F. Supp. 3d at 1254 (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 423–24 (1996)). Evidence of the Light Defendants' purported wrongdoing does not, on its own, show a meeting of the minds between the parties. Plaintiff thus fails to set forth specific facts tending to show an implied-in-fact contract, and, therefore, the Light Defendants are entitled to summary judgment.[9]

## II.     The Light Defendants are entitled to summary judgment on Plaintiff's non-contract claims.

### A.     Plaintiff's non-contract claims are time-barred.

The Light Defendants argue that Plaintiff's non-contract claims—breach of fiduciary duty, conversion, fraud, unjust enrichment, and negligence—all fail for two reasons. First, the Light Defendants contend that the claims are time-barred. Light Defs.' Mot. at 10-12. This is because, even assuming Plaintiff did not learn of its alleged injury until July 2, 2019 when "ISI's attorney sent a letter to Cashco's attorney advising of money that ISI held but that had not been distributed," Plaintiff did not file this case until July 28, 2021. *Id.* at 11-12. Second, the Light Defendants contend the non-contract claims were brought pursuant to an invalid assignment, as claims that sound in tort cannot be assigned under Oklahoma law. *Id.* at 12-14.

---

[9] Plaintiff also argues that the Light Defendants, due to their retention of benefits, have waived any argument regarding the existence of a contract. *See* Resp. to Light Defs.' Mot. Summ. J. at 23-24. However, that argument assumes the existence of a contract in the first instance, and here the Court finds that Plaintiff has failed to set forth specific facts showing the existence of any contract.

In response, Plaintiff argues that, because the parties' contract did not contain an express provision governing time of payment, the Light Defendants had a reasonable amount of time to pay after a demand was made in the July 2, 2019 letter. Pl.'s Resp. to Light Defs.' Mot. Summ. J. at 24-25. Therefore, because a jury could find that 30 days constitutes a reasonable time by which the Light Defendants should have made payment after Plaintiff's demand, Plaintiff contends the jury should decide whether their claims are time-barred. *Id.* at 25-26.

A federal court sitting in diversity applies state law for statute of limitations purposes, *Guar. Trust Co. of New York v. York*, 326 U.S. 99, 109–10 (1945), and state law likewise determines when an action is commenced for statute of limitations purposes, *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980). Therefore, Oklahoma law governs when Plaintiff's claims accrued, and Oklahoma's tolling rules apply, as well. *See Cook v. G.D. Searle & Co., Inc.*, 759 F.2d 800, 802 (10th Cir. 1985).

Looking to Oklahoma law, the statute of limitations for each of Plaintiff's non-contract claims is two years. Okla. Stat. tit. 12, § 95(A)(3); *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015) ("For any negligence claim, including breach of fiduciary duty, a claim accrues when a party ascertains each element of his or her claim. The statute of limitations then runs for two years." (internal citation omitted));[10] *City of Tulsa v. Bank of*

---

[10] Although no party raises the issue, there is caselaw suggesting that, in cases where a fiduciary duty arises from a contract, Oklahoma's statute of limitations governing contract claims applies. *See, e.g.*, *FDIC v. Grant*, 8 F. Supp. 2d 1275, 1297-98 (N.D. Okla. 1998) (citing *Hughes v. Reed,* 46 F.2d 435 (10th Cir. 1931) and concluding that the plaintiff's breach of fiduciary duty claim was premised on a contract implied by law and thus governed by Oklahoma's statute of limitations governing actions arising out of contract); *Marshall v. Am. Fed'n of Gov't Emps., AFL-*

*Okla., N.A.*, 280 P.3d 314, 320 (Okla. 2011) (noting that § 95(A)(3)'s two-year statute of limitations applies to unjust enrichment claim); *Hutchinson v. Carter*, 33 P.3d 958, 962 (Okla. Civ. App. 2001) ("[T]he statute of limitations for fraud is two years."); *Tillman v. Shofner*, 90 P.3d 582, 583 (Okla. Civ. App. 2004) ("A claim for conversion must be filed within two years from the time the cause of action accrued.").[11]

Oklahoma also follows the discovery rule, which allows statutes of limitation in certain tort cases to be tolled "until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016). Applicability of the discovery rule is case specific. *See Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1190 (Okla. 2011). Under the discovery rule, the statute of

---

*CIO*, 996 F. Supp. 1334, 1341 (W.D. Okla. 1998) ("The applicable statute of limitations for a breach of a fiduciary duty or duties which are *ex contractu,* that is, arise from a written contract, such as the duties allegedly breached herein, is five years as provided in Okla. Stat. tit. 12, § 95(10), previously set forth in Okla. Stat. tit. 12, § 95(9)."). However, for several reasons, this line of cases does not apply here.

First, as set forth previously, the Court finds that Plaintiff has failed to set forth specific facts tending to show the existence of a contract between it and the Light Defendants. A fiduciary duty cannot arise out of a non-existent contract. Second, Plaintiff itself does not argue that the alleged fiduciary duty here arose out of any sort of contract—express or implied. Instead, Plaintiff contends that the Light Defendants owed a fiduciary duty based on trust placed in them, their status as Budget's and Cashco's agents, and Ernie Light's advisory role. *See* Pl.'s Mot. Summ. J. at 13-17. Third, even if Plaintiff did contend that a fiduciary duty arose from contract, "an action for breach of fiduciary duty when the fiduciary duty arises from contract can be based either on tort or contract." *Quinlan v. Koch Oil Co.,* 25 F.3d 936, 943 (10th Cir. 1994). Here, the gravamen of Plaintiff's breach of fiduciary duty claim sounds in tort, as there is no contention that the Light Defendants breached any sort of specific contractual duty (likely because there was no contract between the parties).

In any event, the Court alternatively finds that Plaintiff's non-contract claims were brought pursuant to an invalid assignment, so this issue is not dispositive.

[11] Both *Hutchinson* and *Tillman* were released for publication by the Court of Civil Appeals.

limitations does not begin to run until the "acquisition of sufficient information which, if pursued, would lead to the true condition of things." *Daugherty v. Farmers Co-op Ass'n*, 689 P.2d 947, 950–51 (Okla. 1984); *see also Okla. ex rel. Doak v. Eisneramper LLP*, No. CIV-16-224-C, 2016 WL 3963211, at \*2 (W.D. Okla. July 21, 2016).

Here, the Court's analysis hinges on two letters exchanged between legal counsel in June and July of 2019. The first letter, dated June 18, 2019, involves counsel for the Light Defendants, Mr. Riddles, informing Cashco's counsel that ISI is in possession of certain funds rightfully belonging to Cashco and is set forth in relevant part below:

> Dear Counsel:
>
> Please be advised that we represent Investors Services, Inc. ("ISI") in a civil action filed in the United States District Court for the Western District of Oklahoma. During the course of our representation, we have learned that ISI is in possession of $142,500.00 belonging to Cashco, Inc. ("Cashco"), and that Cashco has filed Chapter 7 Bankruptcy in the U.S. Bankruptcy Court for the District of New Mexico (Albuquerque). In light of these facts we believe ISI, as custodian of the aforementioned funds, is obligated to deliver the funds it is holding to the Bankruptcy Trustee in the Cashco Bankruptcy pursuant to 11 U.S.C § 543.
>
> If you have reason to believe ISI is not legally obligated to follow this course, please advise us of the same within ten days of the date of this letter or we will proceed with contacting Cashco's Bankruptcy Trustee regarding the transfer of funds ISI is holding for Cashco.

6/18/2019 Letter. The second letter, dated July 2, 2019, is Plaintiff's then-counsel, Mr. Curtis's, response to the June 18, 2019 letter and is likewise set forth in relevant part below:

> Dear Mr. Riddles:
>
> I have been provided with a copy of your June 18, 2019 letter directed to George D. Giddens at Giddens + Gatton Law, P.C. This Firm has been representing HiTex, LLC in connection with civil litigation in New Mexico and in connection with the Cashco and Budget Chapter 7 cases. I have spoken with Randy Roche concerning the $142,500.00 currently held by Investors Services, Inc. It is my understanding that, according to Cashco's General Ledger, these funds were distributed out of Cashco to the shareholders in 2016 and 2017. Investors Services, Inc. never had authority to withhold these funds and should have distributed them to the shareholders when the funds were disbursed by Cashco. The shareholders were not aware that these funds were being held by Investors Services, Inc. until the current litigation in Oklahoma brought this to light. Mr. Vorel was instructed to release all funds that he may have had in his possession several years ago, and he assured Mr. Roche and the other shareholders that he had done so. The $142,500.00 should be paid to me immediately, and I will take care of distribution to the shareholders. It seems fairly clear that Vorel's holding of these funds amounts to embezzlement, and Mr. Vorel should immediately release these funds to the true owners. Under no circumstances are the funds to be paid into the Cashco Chapter 7 Bankruptcy Estate. Such an action would constitute a continuing conversion of the embezzled funds.

16

7/2/2019 Letter (highlighting in original).

The dispositive question, then, is whether the information contained in the above letters constitutes "sufficient information which, if pursued, would lead to the true condition of things." *Daugherty*, 689 P.2d at 950–51. In other words, is the information contained in the letters sufficient to start the clock on the limitations period governing Plaintiff's non-contract claims? For several reasons, the Court concludes that it is.

First, Mr. Riddles's June 18, 2019 letter provided Plaintiff with enough information to start the limitations period. True enough, the letter does not explicitly "disclose[] to Plaintiff that Defendants had misappropriated those funds for personal gain." *See* Pl.'s Resp. to Light Defs.' Mot. Summ. J. at 2. But such granular detail is not required. Indeed, the "question is not what plaintiff knew with certainty . . ., but whether he had enough information then to start the limitations period and 'through prudent investigation, [he could] obtain sufficient facts to state a cause of action.'" *Bryer v. ConocoPhillips, Co.*, No. CIV-15-1218-HE, 2017 WL 5203043, at *3 (W.D. Okla. May 9, 2017) (quoting *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 676 (10th Cir. 2005)). The contents of the June 18, 2019 letter—at the very least—are "such as to put a reasonable [person] upon inquiry" and trigger the limitations period. *Weathers v. Fulgenzi*, 884 P.2d 538, 541 (Okla. 1994).

Second, and setting aside Mr. Riddles's letter, Mr. Curtis's response letter confirms that Mr. Roche—who was an owner of Cashco and Budget and later assigned his claims to Plaintiff—had discussed with Mr. Curtis some of the relevant facts underlying this case. The letter itself explicitly references such a conversation. But if there were any doubt regarding Plaintiff's knowledge of facts potentially underlying an alleged injury, the

17

highlighted portion of the letter accuses Mr. Vorel—a named defendant in this case—of embezzlement and states that payment of the funds to the bankruptcy estate would constitute conversion.

By July 2, 2019, at the latest, Plaintiff had sufficient reason to believe that Mr. Vorel had engaged in unlawful behavior at its expense. The evidence shows that Plaintiff had sufficient information to assert the claims in this case, but, for whatever reason, it waited nearly a month to do so. "When a plaintiff, despite awareness of an injury, has failed with reasonable diligence to ascertain its cause, Oklahoma courts have not hesitated to apply the bar of the statute of limitations." *Bryer*, 2017 WL 5203043, at *5.

Third, and although the Court does not treat it as dispositive, Plaintiff does not squarely address the limitations issue, at least as it relates to its non-contract claims. Plaintiff argues that its breach-of-contract claim is not time-barred. *See* Pl.'s Resp. to Light Defs.' Mot. Summ. J. at 24-26. But as they note in their Reply, the Light Defendants do not contend that Plaintiff's breach-of-contract claim is time-barred. Light Defs.' Reply at 8-9. It is thus unclear to the Court how Plaintiff's argument has any bearing on a limitations analysis, at least as it relates to its non-contract claims.

For these reasons, the Court concludes that there is no genuine issue of material fact that Plaintiff knew or, with the exercise of reasonable diligence, could have discovered sufficient facts to state a cause of action no later than July 2, 2019. But Plaintiff did not file this action until July 28, 2021. Its claims for breach of fiduciary duty, conversion, fraud, unjust enrichment, and negligence are thus barred by the applicable statute of limitations.

**B.**     **Because the Court finds that Plaintiff's breach-of-contract claim fails, its non-contract claims are brought pursuant to an invalid assignment.**

The Light Defendants argue that "Plaintiff also cannot pursue its non-breach of contract claims against these Defendants because the assignment upon which those claims rest is invalid." Light Defs.' Mot. Summ. J. at 13. Because it is now confirmed that the Light Defendants did not have a contract with Plaintiff, the argument continues, the "claims alleged in Counts II through VI of the Complaint against these Defendants are tort claims without any underlying contractual relationship" and are improperly assigned. *Id.* at 14.

Plaintiff does not respond to the Light Defendants' argument. Presumably, Plaintiff is satisfied that it has shown the existence of a contract, and, therefore, its non-contract claims are properly assignable. But that is just the Court's assumption; Plaintiff does not explicitly make that argument.

The Court previously addressed this argument when it denied the Light Defendants' Motion for Judgment on the Pleadings. *See* 10/14/2022 Order [Doc. No. 57]. However, as noted by the Court in that order, the case was at a "very early stage," and the Court was required to resolve all inferences in Plaintiff's favor. *Id.* at 6. Under that framework, the Court concluded that Plaintiff's claims for "breach of fiduciary duty, conversion, unjust enrichment, fraud, and negligence . . . are claims premised on a contractual relationship" between Plaintiff and the Light Defendants. *Id.* at 7.

As the Light Defendants note, the procedural posture of the case has shifted, and the Court has now concluded that they are entitled to summary judgment on Plaintiff's breach-of-contract claim. Accordingly, because Plaintiff's non-contract claims are not premised

on a contractual relationship, Okla. Stat. tit. 21, § 2017(D) prohibits their assignment. Therefore, even assuming Plaintiff's non-contract claims are not time-barred, the Light Defendants are entitled to summary judgment on this ground, as well.

## CONCLUSION

For these reasons, the Court finds that Plaintiff's admissions in discovery conclusively establish that it did not have a contract with any of the Light Defendants. Setting Plaintiff's admissions aside, the Court alternatively finds that Plaintiff fails to set forth specific facts tending to show the existence of an implied-in-fact contract. Additionally, the Court finds that Plaintiff's claims for breach of fiduciary duty, conversion, fraud, unjust enrichment, and negligence are barred by the applicable statute of limitations. But even if those claims weren't time-barred, the Court finds that they were brought pursuant to an improper assignment.

**IT IS THEREFORE ORDERED** that the Light Defendants' Motion for Summary Judgment [Doc. No. 88] is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 90] is **DENIED**.

**IT IS SO ORDERED** this 13th day of June, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge